David G. McNitt, Esq. P.C
By: David G. McNitt, Esq.
   Attorney I D: 25202
2401 Woodview Way
Suite 2401
Malvern PA 19355

Tel: 610-256-7942

IN THE UNITED STATES BANKRUPTCY COURT FOR

THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | |
|   Ashley May, | : | Case No.: 22-10430 E.L.F. |
|       Debtor | : | Chapter 7 |
| | | |
| Ann L. Ashton | : | Adversary Proceeding No.: 23-00016 (pmm) |
|       Plaintiff | : | |
| vs | : | |
| Ashley May, Debtor | : | |
|       Defendant | : | |

## MEMORANDUM RESPONSE
## TO
## ORDER TO SHOW CAUSE WHY THE PLAINTIFF'S MOTION TO EXTEND TIME FOR DISCOVERY SHOULD NOT BE DENIED

Comes Now, David G. McNitt, Esq., Counsel to Plaintiff and Creditor Ann Ashton, by and through her Agent Thomas Ashton under Durable Power of Attorney, as states the following:

### PROCEDURAL HISTORY OF ADVERSARY CASE

On February 28, 2023 Debtor, by Counsel David G. McNitt, Esq, filed an Adversary Proceeding

On June 28, 2023, Creditor Ashtons Counsel issued subpoenas deuces tecum to multiple witnesses including Wells Fargo Bank N.A. and E-BUILT LLC, herein "E-Built".

On July 14, 2023, Debtor's Counsel Joseph P. Kerrigan filed a Motion to Motion to Quash /Modify Subpoenas, Docket # 19,(herein the "**Kerrigan Motion**")

On August 24, 2023, this Honorable Court issued a Order suspending Pre-trial Dates due, in part, to the pending Kerrigan Motion scheduled to be heard on September 13, 2023.

On September 13, 2023, this Honorable Court held a Hearing on the Kerrigan Motion and on September 14, 2023, issued an **ORDER** limiting discovery from E-Built and Well Fargo to the period February 22, 2021 to February 22, 2022 (herein, the "**Delimiting Order**"). [1]

On September 17, 2023, the undersigned by priority mail provided a copy of the **Delimiting Order** to both E-Built and Wells Fargo.

Wells Fargo responded to the modified Subpoena on by encrypted email dated **October 18, 2023,** providing bank account information requested for the delimited period comprising of 304 pages of information and containing more than 3,100 separate checking deposit, withdrawal, wire transfer and ATM entries .

By November 3, 2023, E-Built had not (and has not) responded to the Subpoena as modified by the ORDER.

With the impending discovery deadline of November 6, 2023, on November 3, 2023, Counsel Undersigned filed a Motion to Extend Discovery Period and Suspend the September 18, 2023, Pretrial Order.

Debtor's Counsel inadvertently attached a Certificate of Service to the *Motion to Extend Discovery Period and Suspend the September 18, 2023, Pretrial Order* that appertained to the original ADVERSARY COMPLAINT and not to the Motion to which it was attached.

REVIEW OF WELLS FARGO DESIGN BUILD MAINTAIN LANDSCAPE LLC ACCOUNTS

The Wells Fargo Bank N.A. response to the Subpoena Deuces Tecum, as modified by the Delimiting Order, revealed that neither Debtor nor her deceased husband (and non-filing Chapter 13 debtor) had any account with that institution. Debtor has listed on her Chapter 13 Schedules that she had one (1) personal account. Debtor has listed in her Chapter 7 Schedules that she has two (2) Wells Fargo Accounts, albeit one is listed as having a "zero" balance. None of Debtor's scheduled bank accounts have any identifying information other than they are at" Wells Fargo".

In its response to the Subpoena and Delimiting Order, Wells Fargo disclosed two(2) accounts owned by DESIGN BUILD MAINTAIN LANDSCAPE, LLC (hereinafter, the "**DBM Accounts**"). Neither Debtor May nor

---

[1] This Honorable Court stated that the reason for the delimiting order was that the Adversary Complaint was predicted *solely* on §727. I must admit that caught me by surprise during argument, and I did not have a copy of the Adversary Complaint at hand. In reviewing the Adversary Complaint, COUNT XV at page 30 of 32 requests that this Honorable Court "Deny Discharge of Debtor's Debt to Plaintiff pursuant to Bankruptcy Code's exception to discharge to the extent such Debt was obtained by false pretenses, a false representation, or actual fraud pursuant to ." 11 U. S. C. §523(a)(2)(A))"

her husband Andrew Brenner (non filing Chapter 13 co-debtor, deceased) held separate individual bank accounts at Wells Fargo.

According to information provided by Wells Fargo Bank N. A., there are only two bank accounts with which Debtor Ashley May is associated. They are Wells Fargo Bank N. A. Account #XXXXXX2279 and #XXXXXX6091, herein denominated by their last four numbers DBM Account 6091 and DBM Account 2279, respectively.

DESIGN BUILD MAINTAIN LANDSCAPE, LLC opened DBM Account 2279 on October 23, 2017, promptly after organizing on October 19, 2017, as a Limited Liability Company. Wells Fargo confirmed such organization with the Secretary of State for the Commonwealth of Pennsylvania, Document Filing Number 6619161. DESIGN BUILD MAINTAIN LANDSCAPE, LLC is identified as the "Sole Owner". Debtor is denominated as a "signer" under Account Relationship. DBM Account 2279 was opened under a BUSINESS ACCOUNT APPLICATION. See, Exhibit A.

DESIGN BUILD MAINTAIN LANDSCAPE LLC opened DBM Account 6091 on February 8, 2019, again confirming with the Secretary of State for the Commonwealth of Pennsylvania that DESIGN BUILD MAINTAIN LANDSCAPE, LLC was a Pennsylvania Limited Liability Company formed on October 19, 2017 - Document Filing Number 6619161. DESIGN BUILD MAINTAIN LANDSCAPE, LLC is identified as the "Sole Owner". Debtor is denominated as a "signer" under Account Relationship. DBM Account 2279 was opened under a BUSINESS ACCOUNT APPLICATION. See, Exhibit B.

### DEBTORS ADMITTED CRIMINAL ACTS – WIRE FRAUD

U.S. Department of Justice Criminal Resource Manual **Section 941.18 U.S.C. 1343** cites the following key elements of wire fraud:

1. That the defendant voluntarily and intentionally devised or participated in a scheme to defraud another out of money
2. That the defendant did so with the intent to defraud
3. That it was reasonably foreseeable that interstate wire communications would be used
4. That interstate wire communications were in fact used.

By her own admission, both prior to and subsequent to filing her Chapter 13 Bankruptcy Petition, Debtor has engaged in mail fraud as defined in 18 U.S.C. 1343—Elements of Wire Fraud.

During her Chapter 13 Creditors' Meeting, Debtor admitted under oath that she schemed (in conjunction with her deceased husband and employer E-Built) to wire transfer their personal E-Built wage payments to Wells Fargo business account 2279, which was opened by, is owned by, and in the name of DESIGN

BUILD MAINTAIN LANDSCAPE, LLC.

Debtor has admitted under oath that she voluntarily and intentionally set up the wire transfer scheme at E-Built and did so to prevent a creditor from levying on her assets. Debtor believed the creditor was about to do so.

She not only reasonably foresaw, but set up the process, to use interstate wire communication by directing actual payment by ACH wire transfers from E-Built to DESIGN BUILD MAINTAIN LANDSCAPE LLC. She for more than four years used the ACH wire transfer for years to process, transfer and hide wages from her creditors.

The elements of Wire Fraud under 18 U.S.C.§ 1343 parallel the mail fraud statute but require the use of interstate telephone or electronic communications in furtherance of the scheme. United States v. Frey, 42 F. 3rd 795, 797 (3rd Cir. 1994); United States v. Profit, 49 F.3rd 404, 406 n.1 (8th Cir.) - The essential elements of wire fraud are that a defendant: (1) voluntarily and intentionally devised or participated in a scheme to defraud another out of money; (2) did so with intent to defraud; (3) reasonably foresee that interstate wire communication would be used; and, (4) in fact used wire communications.

As other courts have stated:

> "There are two elements in mail fraud: (1) having devised or intending to devise a scheme to defraud (or to perform specified fraudulent acts), and (2) use of the mail for the purpose of executing, or attempting to execute, the scheme (or specified fraudulent acts)." Schmuck v. United States, 489 U.S. 705, 721 n. 10 (1989); see also Pereira v. United States, 347 U.S. 1, 8 (1954) ("The elements of the offense of mail fraud under . . . § 1341 are (1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme."); Laura A. Eilers & Harvey B. Silikovitz, Mail and Wire Fraud, 31 Am. Crim. L. Rev. 703, 704 (1994) (cases cited). See also, Investigative Authority p. 941. 18 U.S.C. 1343 - Elements of Wire Fraud.

Wire Fraud is a felony. If convicted, penalties provide for a fine of up to $250,000.00 and / or a maximum prison sentence of up to 20 years. 18 U.S.C. Section 1343.

Debtor cannot now, under color of the Bankruptcy Code, erase the artifice and scheme to defraud her creditors.

### DEBTOR'S WILLFUL AND INTENTIONAL FRAUDULENT MISREPRESENTATION OF FACTS IN CONNECTION WITH HER BANKRUPTCY CASE

Promptly after filing Debor's Chapter 13 case, the court was advised that Debtor was not paying post-petition rent as required under Debtor's RESIDENTIAL LEASE for premises 1935 HORSESHOE TRAIL, Chester Springs, PA ("**Property**"). The Honorable Eric L. Frank, Judge of this Honorable Court directed that Debtor immediately pay post-petition rent pursuant to terms of the Residential Lease.

Debtor complied and on March 15, 2022, hand delivered a rent check 2366 for $3,713.00 payable to Creditor Landlord Ann Ashton. However, the "rent check" was drawn on DESIGN BUILD MAINTAIN LANDSCAPE LLC depository account with Wells Fargo Bank N. A. Account #XXXXXX2279 [DBM Account 2279]. See, Exhibit C.

At the of March 22, 20222, Creditors Meeting, when Judge Frank questioned Debtor under oath, she admitted that she and her husband, Andrew Brenner, in coordination with their employer E-Built LLC, diverted their wage payments into the DBM Account 2279. Debtor testified that the reason for such diversion was to hide the money from a judgment creditor. Debtor further testified that she had received information that the judgment creditor (unidentified in testimony) was intending to execute collection proceedings on the judgment against her. Debtor wanted to hide the money so that no lien attached. Debtor specifically stated that she created and transferred her and Andew Brenner's E-Built wages to avoid – her word - garnishment.

From and after the March 15, 2022, rent check, Debtor paid subsequent rent to Creditor Ashton with by Certified Checks issued by Wells Fargo Bank, N.A. The subsequent rent checks appear to have been funded by cash withdrawals for both DBM Account 2279 and DBM Account 6091.

When requested by Creditor to produce the DBM 2279 Account information, Debtor refused. Her state reason was that Creditor wouldn't understand the account and would use the account information against her in her Chapter 13 proceeding.

Judge Frank offered to review the account in camera. However, Debtor resisted that compromise and it did not happen.

E-Built twice monthly used ACH wire transfers to divert Debtor's and her husband Andrew Brenner's wage payments to DESIGN BUILD MAINTAIN LANDSCAPE LLC depository account with Wells Fargo Bank N. A. Account #XXXXXX2279 to avoid creditors' claims.

Wells Fargo has produced the Account information in response to a Subpoena Deuces Tecum for the period February 22, 2021, to February 21, 2023. Forensic review of that account shows 24 ACH wire transfers of Debtor's and Andrew Brenner's wages from E-Built to **WF Account 2279**.

However, review of **WF ACCOUNT 2279** also shows that in addition to the E-Built ACH Wage Payments, at least **$50,970.87** in additional deposits, more than **$49,000.00 of which are from unidentifiable sources though online payment services.** Wells Fargo statements do not identify the originating source of payment. THIS REQUIRES FURTHER INVESTIGATION. See, Exhibit D.

Debtor testified that her and Anderw Brenner's sole source of income was from E-Built wages. She also has testified under oath that Design Build Maintain LLC had not conducted business after 2020.

In attempting to source funds to prove a confirmable Chapter 13 Plan, Debtor testified during the Creditors' Meeting that her husband, Andrew Brenner, would be able to provide an additional $2000.00 per month of net disposable income by "restarting" the Design Build Maintain Landscape LLC business.

Furthermore, more than **$29,000.00** of online transfers were made from **WF Account 2279** to **WF Account 6091.** See Exhibit D.

See Exhibit D is an Excel computation of *excerpts* from the **more that the 3,150 specific transaction entries** during the period February 22, 2021 to February 21, 2022 in both WF Account 2279 and WF Account 6091.

From a forensic standpoint, the unidentified source of more than $50,000 of deposits into account 2279 coupled with the statements under oath that DESIGN BUILD MAINTAIN LANDSCAPE LLC was not in business after 2020 suggests another source of funds that has been undisclosed and warrants further discovery.

### ASSET DISCREPANCIES

Ch 13 Statement of Current Monthly Income filed 03/15/22 Docket # 21 stated:

| | |
|---|---|
| Debtor Ashely May | $8,333.33 |
| Non filing Co-Debtor Andrew Brenner | $6,666.66 |
| Total | $14,999.99 |

or a

| | |
|---|---|
| Gross Annual Income (x 12) | $179,999.98 |

Based on the Chapter 13 filings on 03/15/2022 (Original) the net monthly income after taxes was $11,203.00. Monthly expenses including rent were $9,008.00. Net Monthly Disposable Income was $4,245.00. See, Exhibit E.

Prior to amending the Chapter 13 filings on 04/02/2022 (amended), Debtor testified that the Non-filing Co-Debtor **could easily reactivate** DESIGN BUILD MAINTAIN LANDSCAPE LLC and contribute an additional $2,050.00 of income so that Monthly net income would increase to $13,253.00. However, even with that assertion the Debtor was unable to formulate a confirmable Chapter 13 Plan.

Debtor converted the Chapter 13 case to Chapter 7 following the June 20, 2022, death of her husband Andrew Brenner, the non-filing co-debtor in her Chapter 13 case.

### THE SEPTEMBER 15, 2022, CHAPTER 7 SCHEDULES

In the Chapter 7 Schedule A/B filed on September 15, 2022, certain Assets listed by Debtor listed had not appeared I her Chapter 13 Schedules do not appear to be Debtor's property. They appear to be property of either the decedent, Andrew Brenner, or the property of Design Build Maintain Landscape LLC.

As such, those assets would by operation of law be the property of Andrew Brenner's Decedent's Estate and subject to administration according to the - DECEDENTS, ESTATES AND FIDUCIARIES CODE · 20 Pa.C.S. §§ 101 et seq.

Debtor listed two vehicles in her Chapter 7 Schedule A/B. One described at Part 2, Line 3.1 is a 2002 GMC 2500 valued at $3,014 with the notation "Inherited from my husband".

The other is described at Part 2, Line 3.2 as a 2008 Chevrolet Silverado 1500 valued at $2518.00.

Other Personal and Household Items described at Part 3, Line 15, total. However, Debtor apparently received a settlement from an insurance company when some (presumably not all) of these assets were destroyed in a fire shortly after converting her case to Chapter 7. Entitlement to those proceed is disputed in the Adversary Case.

Debtor stated in Form A/B at Part 4, Line 19, that she has no interest in "non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture". That would include DESIGN BUILD MAINTAIN LANDSCAPE LLC.

Debtor stated in Form A/B at Part 5, Line 37, that she had no interest in any business-related property.

Of the $25,655.00 in total assets claimed in Form A/B at Part 8, Line 63, Debtor **does not have** an ownership interest in the **$2,400 Wells Fargo Account** or the **2002 GMC 2500 valued at $3,014.00**.

In her Chapter 7 Schedules, Debtor claims she has two Wells Fargo Bank accounts. one with a "zero" balance and the other with $2,400.00.

Debtor has no ownership interest in any Bank Account at Wells Fargo. The title owner of the two bank accounts is DESIGN BUILD MAINTAIN LANDSCAPE LLC, a Pennsylvania limited Liability Company organized and owned by Andrew Brenner, now deceased. Debtor had signature authority on those accounts only.

Those accounts became property of the Andrew Brenner Estate immediately upon his death. Debtor and her attorney, Joseph P Kerrigan advised the court during the Chapter 7 creditors meeting that Andrew Brenner died intestate and the Debtor had not, and did not intend to, raise an estate for decedent Brenner.

Many of the assets were landscaping equipment used by DESIGN BUILD MAINTAIN LANDSCAPE LLC in it business based on photographic evidence. Given the nature of the assets claimed, they more reasonably belonging to Design Build Maintain Landscape LLC.

## CALCULATION OF MISSING INCOME

After the death of the Non -filing Co-Debtor, Counsel for Creditor Ann Ashton advised the Chapter 7 Trustee that it appeared there was a shortfall in financial assets of as much as $80,00.00 over the period from January 1, 2020, to February 22, 2023. The Debtor's schedules did not show any discernable increase in assets over that period.

Based on an analysis of the Debtor's Chapter 13 Schedules over the period from January 1, 2020, through February 23, 2022, it appears that Debtor and her husband had a net disposable income of as much as $148,000.00 in Disposable Net Income *before payment of rent*. During that 26-month period, Debtor and her husband paid $68,615.00 in rent for 19 months. In violation of a Supersedeas Order issued by the Chester County Cour of Common Pleas Case No.  .They did not pay rent for the seven (7) month period from August 2021 through February 2022.

Therefore, if Debtor's Chapter 13 Schedules of Net Disposable Income are to be believed, Debtor and her husband could have accumulated more than $79,000 in cash. See, Exhibit E.

In November of 2019, in their application to rent Creditors property, Debtor and her husband identified that they had  two (2) Wells Fargo Accounts totaling $21,000.00, with balances of $9,000 and $12,000.00, respectively. Wisth only $2,400.00 of reported bank balance in the Chapter 7 Schedules, this represents a decrease in cash balance of $18,600.00.

Given that over the period from February 22, 2021, to February 22, 2022, the DBM Account 6091 Account had unexplained deposits of $50,970.00 over and above $124,811.00 of diverted E-Built wages, or $175,781 in total deposits, there is a definite incongruity. See Exhibits D and E.

As Debtor said to Judge Frank when she balked at providing the details of DBM Account 6091, "You wouldn't understand an would try to use it against me".

She is proved correct.

### DEBTOR'S OTHER MATERIAL UNTRUE STATEMENTS UNDER OATH

Throughout Debtor's Bankruptcy proceeding, Debtor has made several additional false statements under oath.

When questioned about receipt of proceeds from a casualty fire loss that occurred in early July 2023, she denied having received (or spent) any of the insurance proceeds. In a later hearing, when confronted with evidence that she had both received and spent a significant amount of the insurance proceeds, Debtor reversed course and admitted that she had both received and spent insurance proceeds. Her counsel, Joseph P. Kerrigan, immediately requested that the hearing be terminated so that he could find alternative counsel for her to deal with this prior false testimony. Again, Debtor had lied under oath to deceive the Court and her creditors.

Debtors Schedules filed with the Court in this matter have claimed as exempt both property and financial assets that are not titled in her name, to wit:

**According to information provided by Wells Fargo Bank N. A. , there are only two bank accounts with which Debtor Ashley May is associated in any manner .** They are Wells Fargo Bank N. A. Accounts #XXXXXX2279 and #XXXXXX6091. Neither of these accounts are titled in Debtor's Name. Both Identify the owner as DESIGN BUILD MAINTAIN LANDSCAPE LLC. See, Exhibits A and B.

### PERTINENT FACTUAL BACKGROUND

On or about December 31, 2019, Debtor Ashley May and her then Husband Andrew Brenner (now deceased), as Tenants entered into RESIDENTIAL LEASE with Creditor Ann Ashton for a property [2] at 1935 Horseshoe Trail, Chester Springs PA (Chester County).

---

[2] See, Pugh v. Holmes 486 Pa. 272,284, 405 A.2d 897, ___ (1979), its progeny, and cases interpreting 35 P.S.§ 1700-1.

.

On June 19, 20220, Creditor Ann Ashton filed a Complaint in Eviction against Debtor Ashley May and her then Husband Andrew Brenner in the Magisterial District Court 15-4-03, Chester County, Pennsylvania. The Complaint was for reasons other than non-payment of rent.

During the eviction case, Debtor Ashley May and her then Husband Andrew Brenner elected to place rent due in an escrow account pursuant to Pennsylvania Law based, in part, on a counter claim of premises uninhabitability. The 6091 Account was identified as the "Escrow Account" to which rent deposits were made during the litigation.

Debtor Ann Ashton received judgment in her favor on October 12, 2020. Debtor Ashley May and Andrew Brenner appealed to Chester County Court of Common Pleas, Case No: 2020-07783-CV . At the time of the Judgment, the Escrow Balance was $17,500.00 comprised of rent deposits for five months from June through October 15, 2020. See Exhibit F.

Thereafter, Debtor Ashley May and Andrew Brenner made rent deposits in escrow to Chester County Prothonotary to sustain Supercedeas.

Due to the delimiting discovery order of this Honorable Court, we have no information of 6091 account activities from October 15, 2020, through February 21, 2021. However, we now know that at some point thereafter, Debtor Ashley May and Andrew Brenner ceased using Account 6091 exclusively for escrow purposes.

For the period 2/22/21 to 2/22/22, a rough estimate is that there are at least **1410 transactions** in Account **6091**. There are approximately **1,740 transactions** Account 2279 for the period 2/22/21 to 2/22/22 (roughly 145 per month). In those more than **3100 transactions** are many "odd" looking deposits, transfers, withdrawals, and payments mad without rhyme or reason. There are more than 90 transfer transactions to and from the two accounts.

DBM Account 2279 for the period 2/22/21 to 2/22/22, the date Ashley May filed Chapter 13 showed a balance $ 655.44. It appears that the ending balance on DBM Account 6091 on February 11, 2022, was $80.54, although the last unredacted entry is for 2/11/22.

Neither of these balances reflect anything near the $2,400.00 claimed in her Chapter 13, Sch A/B Line 16 as er "Wells Fargo Account" and claims it as Exempt property in Schedule C, Part 2. This amount does not corelate with either DESIGN BUILD MAINTAIN LANDSCAPE LLC deposit account balance.

The Schedules appear to be "make believe" with arbitrary numbers plucked from this air without basis in fact.

## ACCOUNT 2279

Account 2279 is the account into which Ms. May and Mr. Brenner diverted their E-BUILT "net" payroll. This was comprised of payroll deposits - $2,739.41 to Debtor Ashley May and $2,461.05 to Andrew Brenner – twice monthly. Total payroll deposits over a 12-month period are approximately **$124,811.04.**

In addition to the E-BUILT payroll, there were at least **$50,970.87** in deposits to Account 6091 from what could be considered "hazy" sources, to wit: **$17,618.26** from **Intuit SOLN Transfers**; **$27,052.61** classified only as **MOBILE DEPOSITS;** **$4,800.00** in transfers **from DBM account 6091** to DBM Account **2279,** and a sole **unidentified check** deposited for **$1,500.00**. During the delimited period, there were **$28,020.00** in transfers from DBM Account 2279 to DBM Account 6091.

The **$50,970.87** in deposits to **2279** and the **$1500.00** deposit to **6091** are not appropriately identified, explained, or accounted for.

Another unusual thing about these deposits was their relatively small size. Of approximately 89 transfers (on the average 7.4 per month), only 16 were $450.00 or more. Often there were multiple small transfers in a single day. This is unusual. For Example, on March 29, 2021, there were five (5) transfers to 2279 totaling $820.00, with the largest being $400.00 and the smallest $20.00, rather than a single $820.00 deposit. Why?

This nearly **$52,500** in shrouded funds need to have a transparent source identified. That sum constitutes nearly forty-two percent (42%) of the money deposited into the two DESIGN BUILD MAINTAIN LANDSCAPE LLC accounts. It is more than a material sum. Debtor must be compelled identify the source(s) of these deposits.

In my missive to the Chapter 7 Trustee and in argument to Judge Frank, it was suggested over the period from December 2020 to February 22, 2022, there appeared to be as much as $100,000.00 in missing funds.

The unaccounted for $52,500 would appear to give credence to that assessment.

## ACCOUNT 6091

It appears that the **ending balance on account 6091 on February 11, 2022**, was **$80.54**, although the last unredacted entry is for **2/11/22**.

Account **6091** often carried a negative balance, although one transaction immediately stood out - a **$5,000 ATM Check deposit on 5/28/2022**. That coincided with two (2) online transfers from DESIGN

BUILD MAINTAIN LANDSCAPE LLC - one was on 5/27/22 for $300.00 and the other for $350.00 was on 5/28/22. These deposits were quickly negated by a 6/1/22 $3.500.00 online transfer from 6091 to 2279. This is again an unusual inter-account sequence.

Bottom line, these accounts are a collective mess. It will take much longer to get to the bottom of these more than 3100 transactions.

However, more importantly, the appearance within these accounts of **$50,970.87** in deposits to Account 6091, to wit: **$17,618.26** from **Intuit SOLN Transfers**; $**27,052.61** classified only as *UNIDENTIFIABLE* **MOBILE DEPOSITS;  $4,800.00** in transfers **from DBM account** 6091 to DBM Account 2279, and a sole **unidentified check** deposited for **$1,500.00**.

These funds seem to mysteriously appear from nowhere without discernable background source information. This needs further investigation.

The existence of such large sums suggests that there may be sources of undisclosed cash or assets beyond those disclosed int the Debor's Bankruptcy Schedules, whether in Chapter 13 or Chapter 7.

The accounts are titled to DESIGN BUILD MAINTAIN LANDSCAPE LLC. Debtor May has no right to them.

By her own admission under oath in this Court, Debtor Ashley May and her deceased husband willfully, intentionally and maliciously undertook to hide assets from Creditors and thus defraud them.

The Debtor has "unclean hands" and is not to be rewarded for her deceit.

## WHO OWNED WHAT – CERTAIN ASSETS DEBTOR CLAIMS AS EXEMPT BELONG TO DESIGN BUILD MAINTAIN LANDSCAPE LLC

Debtor Claims EXEMPT certain assets that appear related to, and since 2017 have been used in and by, DESIGN BUILD MAINTAIN LANDSCAPE LLC's landscape Business. Photographs of such use have appeared on DESIGN BUILD MAINTAIN LANDSCAPE LLC 's Facebook and online postings for years.

The comparison hereafter is between Debtor Ashely may's Chapter 13 Schedules A/B originally filed and Schedules A/B in the converted Chapter 7 dated October 11, 2022.

Creditor Ann Ashton, by and through counsel undersigned, demonstrates discrepancies in Schedule A/B property.  Creditor posits that Debtor Ashley May claims as property of the Estate property belonging to either her deceased husband or a Limited liability Company of which he was the sole owner. Debtor Ashely May, is therefore, not entitled to claim such property as EXEMPT under Schedule C.

In her Chapter 13 and Chapter 7 Schedules filed, Debtor Ashely May has entered the following conflicting claims to property:

**Part 2: Describe Your Vehicles**:

In her initial March 15, 2022, Chapter **13 Schedule A/B**: , **Line 3. 1** filing Debtor May on claimed one vehicle - a 2008 GMC Chevrolet Silverado 1500 pick-up valued at $2518.00

By comparison, in her **10/11/22 Chapter 7 Schedule A/B**: Property, she now claims three vehicles. In addition to the vehicle above,

**Line 3.2**  she claims a 2002 GMC 2500 valued at $3014 "inherited from husband" and

**Line 3.3**  2004 Ford F-150 valued at $100.00.

Debtor now claims all three as Exempt property. She has no title to wither the 2002 GMC 2500 or the 2004 Ford F-150. They are titled either to Andrew Brenner or DBM and as such subject to administration under the Estate of Andrew Brenner either as his personal property or as an asset of his wholly owned business Design Build maintain LLC, and subject to claims of their respective creditors.

**Financial Assets**

**Part 4:  Describe your Financial Assets**

**Line 17, Deposits of Money**

*Examples*: Checking, savings, or other financial accounts, certificated of deposit; shares in credit unions; brokerage houses and other similar institutions. If your have multiple accounts with the same institution, list each.

    CHAPTER 13 –  NO - Debtor Lists no Deposits of Money in Initial filing on March 15, 2022.

    CHAPTER 7 –  YES

        **Line 17.1**  Savings Account - Wells Fargo Accounts **$5,049.00**

        **Line 17.2**  Savings Account - Wells Fargo Accounts **$2,370.00**.

**DEBTOR CLAIMS BOTH AS EXEMPT – THESE ARE ACCOUNTS TITLED TO DESIGN BUILD MAINTAIN LANDSCAPE LLC**

**Line 19. Non-publically traded stock and interests in incorporated and unincorporated business, including an interest in an LLC, partnership and joint venture.**

CHAPTER 13. NO

CHAPTER 7. NO

The only two accounts Debtor has disclosed are the DBM Account 6091 and DBM Account 2279 above discussed. Debtor has never disclosed a personal, individual financial account.

**Part 5. Describe any Business-Related Property You Own or have interest in......**

**Line 37.** Do you own or have any legal or equitable interest in any business- related property?

    CHAPTER 13    NO "go to Part 6"

        No question on form because none listed. Goes from Line 37 to Part 6, Line 46

    CHAPTER 7.    YES.

**Line 38.** Accounts receivables or commissions you already earned.

    Chapter 13    Schedule has no line 38

    CHAPTER 7.    NO.

**But in schedules separately says she has accounts receivable - find**

**Line 39.** Office equipment, furnishings, and supplies.

*Examples*: Business related computers, software, modems, printers, copiers, fax machines, rugs, telephones, desks, chairs electronic devices.

    CHAPTER 13    NO.

    CHAPTER 7    NO

It is rare that a business such as DBM does not have office equipment, furnishings, and supplies.

**Line 40.** Machinery, fixtures,, equipment, supplies you use in business, and tools of your trade

    CHAPTER 13 –    NO LINE ON SCHEDULE

    CHAPTER 7    YES, Describe

    *"cut-off machine, power washer, zero turn mower"* - Valued at $2,675.00.

These assets are typically associated with the landscape business activities undertaken by DBM. Given Debtor May made no prior claim to ownership by in either her Chapter 13 Plans or her Chapter 7 Schedules until October 11, 2022. Estimates for the "zero turn mower" online are $4,000.00 alone.

Debtor response to Interrogatories identified two snowplows that are mounted to the front of trucks and used for commercial snow plowing. These are not identified in her schedules. However, Debtor claims that she purchased one of the snowplows as a gift for her deceased husband. From what account? When? For how much?

Again, such equipment is consistent with the business activities of a landscaping company – not an individual.

Debtor denied in the 341 hearing that there was a Dual Axel Hydraulic Dump trailer. In response to Interrogatories, Debtor now says that is owned by DBM and is parked a E- Built.

### SUMMARY

This matter has been prosecuted in a timely manner. Subpoenas were timely issued and served in the spring of 2023. A Motion to Quash or Modify the Subpoenas to Wells Fargo and E-Built was filed on July 14, 2023. The hearing was not held thereon until September 13, 2023, a period of nearly two months. This Court issued and Order modifying the Subpoenas issued September 14, 2023. A copy of that Order was promptly delivered to Wells Fargo and E-Built by priority mail on September 17, 2023. Wells Fargo's responded to the Subpoena on or about October 18 and provided more than 300 pages of documents detailing more than 3,100 financial transactions. In reviewing that data, we have discovered more than $50,000 in revenue that waS deposited into DBM Account 2279 in addition to the wages fraudulently deposited by Debtor and her now deceased husband with the apparent cooperation or their employer E-Built, And E-Built has yet to respond. **There has been no untoward delay or failure to prosecute!**

WHEREFORE, PLAINTIFF'S MOTION TO EXTEND TIME FOR DISCOVERY should be granted.

Respectfully submitted this 28th day of November, 2023.

David G. McNitt, Esq. P.C

*David G. McNitt*

By: David G. McNitt, Esq.
  Attorney I D: 25202
2401 Woodview Way
Suite 2401
Malvern PA 19355

Tel: 610-256-7942

Email: mcnittlaw@gmail.com

[Electronically signed]