**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Ashley May, | | Chapter 7 |
| | : | |
| Debtor. | : | Bky. No. 22-10430 (PMM) |
| | : | |
| Ann L. Ashton, | : | |
| | : | |
| Plaintiff | : | Adv. No. 23-0016 (PMM) |
| | : | |
| v. | : | |
| | : | |
| Ashley May, | : | |
| | : | |
| | : | |
| Defendant | : | |

------------------------------------------------

# O P I N I O N

## I. INTRODUCTION

This Adversary Proceeding presents a familiar scenario: a bankruptcy debtor's failure to pay a creditor (in this case, her landlord) swelled into a contentious dispute concerning more than the amount of debt. The Debtor owes the Plaintiff $41,500.00 in unpaid rent. The landlord creditor, Ann Ashton, sued the Debtor and her husband, Andrew Brenner (now deceased), for payment of rent and related relief in state court and has followed the Debtor to Bankruptcy Court in an ongoing effort to collect.

The collection effort has been robust. After suing the Debtor in state court, the Plaintiff filed a Complaint in this Court stating sixteen (16) causes of action, ranging from an accusation of bankruptcy fraud to many allegations that the Debtor should not receive a bankruptcy discharge and that the debt to the Plaintiff should not be discharged. Pretrial proceedings in this

matter have been equally vexatious, characterized by numerous motions, objections, and delays.
The culmination of the proceeding is the pending cross-motions for summary judgment.[1]

The wide-ranging Complaint lacks both form[2] and substance.  The pre-trial proceedings
and discovery process failed to shed any light; the Plaintiff, even at this late stage, offers no
support for the myriad causes of action.  As analyzed below, the Debtor's Motion for Summary
Judgment will serve to dispose of this matter entirely in her favor.  While summary judgment
will be granted to the Debtor with regard to the seven (7) causes of action in which the Plaintiff
seeks to deny discharge, two (2) causes of action will be dismissed for lack of jurisdiction, two
(2) counts will be dismissed for lack of standing, and five (5) counts will be dismissed as moot.
Accordingly, the Plaintiff's Motion for Partial Summary Judgment will be denied.

## II. FACTUAL BACKGROUND

The following facts are taken from the Complaint and pleadings and are not in dispute.
The Plaintiff owns property located at 1935 Horseshoe Trail in Chester Springs, PA (the
"Property").  The Debtor and her husband, Andrew Brenner, rented the Property from Ashton for
a three (3) year period.  See attachment to Proof of Claim no. 10 (the "Lease").  In applying for
the Lease, the Debtor represented that she and Mr. Brenner were employed by a company they
owned, E-Built LLC ("E-Built") and had a combined annual income of approximately
$180,000.00.  Complaint, ¶25.[3]  Mr. Brenner solely owned a landscaping company called Design
Build Maintain ("DBM").  Complaint, ¶124.  DBM ceased operations in 2019.  Complaint, ¶124.

The term of the Lease was January 15, 2020, through January 31, 2023.  The rent was
$3,500.00 per month for the first year and increased to $3,605.00 per month for year two and

---

[1]      The Plaintiff's Motion is a motion for partial summary judgment. The Debtor's motion seeks summary
judgment with regard to all counts.
[2]      For example, there is no Count VI; Count X is misnumbered; Counts XV and XVI are repeated.
[3]      The Debtor's current income from E-Built is about $8,333.00 per month.  Schedule I.

$3,713.00 for year three.  The Lease specified that the Property was to be used for "residential purposes only."  Complaint ¶30.

In June 2020, the Debtor and her husband began to use the Property for commercial and agricultural purposes.  Complaint ¶41.  Meanwhile, the Debtor and Mr. Brenner maintained that the Property was not habitable due to a faulty sewage system.  See E.g. Complaint and Answer, ¶65.  The resulting dispute between the parties caused the Debtor and her husband to place their rent in a separate account in Wells Fargo (the "Escrow Account").  Complaint and Answer, ¶¶74; 162.  The couple used $4,752.00 of the Escrow Account to make repairs on the Property.  Complaint, ¶184.

The Debtor's husband, Andrew Brenner, died on June 20, 2022.

Following the stay relief granted to the Plaintiff (and described below) on July 17, 2022, the Debtor vacated the Property and moved to Prizer Road in Kimberton, PA (the "Prizer Property").  Complaint and Amended Answer, ¶¶149; 159.  About two (2) weeks later, on July 30, 2022, a barn fire (the "Barn Fire") at the Prizer Property destroyed a substantial amount of the Debtor's belongings.  Complaint, ¶161.  The Debtor received $45,000.00 from an insurance policy covering the property lost in the fire. Doc. #19 at 4, 8 (the "Insurance Proceeds").

### III.  PROCEDURAL HISTORY

On October 13, 2020 (pre-petition), Ashton received an eviction judgment and order for possession in Chester County State Court.  Andrew Brenner and the Debtor were found liable for $1,718.88 in fees and costs.  See attachment to Proof of Claim no. 10.  This judgment was appealed on October 21, 2020, meaning that the Debtor was entitled to a trial de novo.  See audio recording of Judge Frank's bench opinion, recording found at doc. #49 in the main case, at 8:29

(the "Audio File").[4]  The Defendants were required to pay all monthly rent in order to stay

enforcement of the judgment for possession.  Complaint, ¶86.  The Debtor and Mr. Brenner

failed to make all required rent payments.  Complaint and Answer, ¶92.  Plaintiff filed a Motion

to Terminate Supersedeas on February 1, 2022.  Complaint, ¶93.  Prosecution of this Motion was

initially stayed by the bankruptcy filing but was reinstated upon the granting of stay relief.

The Debtor filed for chapter 13 bankruptcy protection on February 22, 2022. The case

was converted to chapter 7 on July 18, 2022.  While the chapter 7 trustee initially determined

that there were assets to administer, see doc. #105 in the main case, on December 13, 2023, the

bankruptcy was changed to a "no asset" case.  Doc. #127 in the main case.

The Debtor initially omitted certain information from her schedules, which were

amended several times.[5] Complaint and Amended Answer, ¶¶99-101.  The Debtor's most recent

schedule A/B shows the total value of the property that the Debtor owns is about $33,799.00

(including three (3) old cars).

Ashton filed—and later withdrew—a proof of claim in the amount of $49,326.00 for

unpaid rent from June 2021 through February 2022.  See Proof of Claim no. 10-1 and Objection

thereto (doc. #60).

On April 22, 2022, Judge Frank granted Ashton's Motion for Relief, allowing the creditor

to proceed with a state court possession action with regard to the Property, subject to certain

conditions and terms.  See doc. #48 in the main case.  Judge Frank determined that the Debtor

owed a total of $41,500.00 in rent to Ashton.  Further, cause to lift the stay was found because,

as Judge Frank detailed, cure of the amount owed and assumption of the Lease by the Debtor

---

[4]        This bankruptcy case and adversary proceeding were transferred to the undersigned Judge on March 1,
2023 upon the retirement of Judge Frank.
[5]        See e.g. doc. #'s 41-45; 94-99; 100,101, 109-112 in the main case.

4

were "patently infeasible."  Audio File at 25:37.  Judge Frank ordered the Debtor to amend her

schedules in order to provide complete and accurate information regarding property owned.

Doc. #48 in the main case.

On February 28, 2023, the Plaintiff[6] filed this Adversary Proceeding, purporting to state

sixteen (16)[7] cause of action. The stated allegations are:

- Bankruptcy Fraud (Count I)
- Wrongful Use of Bankruptcy Process pursuant to 18 U.S.C. §§151-152 (Count II)
- Denial of Discharge pursuant to 11 U.S.C. §727(a)(2)(A), §727(a)(2)(B), §727(a)(3), §727(a)(4)(A), §727(a)(5)(A) (Counts 3-5 and 7-9; there is no Count VI)
- Declaratory judgment that the Escrow Account is not property of the estate (Count X, misnumbered as Count XI)[8]
- Declaratory judgment that the Casualty Insurance payments to Debtor are property of the estate (Count XI).
- Denial of discharge until Debtor complies with exempt property claims under §522 (Count XII)
- Injunction prohibiting Debtor from destroying records of DBM (Count XIII)
- Injunction prohibiting Debtor from selling assets of DBM (Count XIV)
- Denial of discharge of debt pursuant to 11 U.S.C. §523(a)(2)(A) (Count XV)
- Accounting of business transactions from 2019 through filing of petition (Count XV, repeated)
- Accounting of transactions with Fire and Casualty Insurance (Count XVI, repeated)

The Complaint initially named the chapter 7 trustee (Christine Shubert) as a Defendant.

However, on August 21, 2023, a compromise was approved among the parties.  Doc. #'s 19, 24

(collectively, the "Stipulation").  Pursuant to the Stipulation:

- The Trustee paid the amount in the Escrow Account to the Plaintiff;
- The Insurance Proceeds were abandoned by the Trustee to the Debtor; and
- The Adversary Proceeding was dismissed with prejudice with regard to the Trustee

---

[6]     The Adversary Proceeding was actually brought by Thomas G. Ashton, who is power of attorney for his mother Ann.

[7]     The §727(a)(2)(A) allegation is duplicated in Counts III and Count VIII. There is neither a count VI nor a count X but count numbers XI and XV are repeated twice.

[8]     This Count inexplicably cites 11 U.S.C. §727(9); there is no such section of the Code.

Following this settlement, the remaining parties (Ashton and May) engaged in an extended

discovery dispute.

At the end of February 2024, the parties filed cross-motions for summary judgment.  The

Plaintiff seeks partial summary judgment only with regard to Count XI.  The Defendant's

Motion, on the other hand, seeks summary judgment with regard to all counts of the Complaint.

## IV.  THE PARTIES' ARGUMENTS

The Defendant's Motion, styled as one for summary judgment, asserts that seven (7) of

the causes of action[9] are moot as having already been resolved or for which relief is not

available.  She also asserts that the Plaintiff lacks standing to bring two (2) criminal causes of

action.  Finally, the Defendant seeks summary judgment with regard to the seven (7)

nondischargeability causes of action because the Plaintiff has offered "no support . . . no

specificity [and] no discovery" with regard to these allegations.  Motion at 14.[10]

The Plaintiff's Motion seeks summary judgment only with regard to Count XI- asserting

that the Insurance Proceeds are property of the estate which may be distributed to creditors.

## V.  SUMMARY JUDGMENT STANDARD

The standard regarding summary judgment is well known.  Pursuant to Federal Rule of

Civil Procedure 56(a), summary judgment is appropriate if "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  Genuine issues of material fact refer to "any reasonable

---

[9]     The Defendant makes this argument with regard to Counts XI, XI, XII, XIII, XIV, XV, and XVI.
[10]     The Debtor's Motion only names six (6) causes of action, presumably due to the repetitive and confusing
way in which the Complaint has been crafted.  I assume that the Debtor seeks summary judgment with regard to all
seven (7) of the nondischargeability counts.

disagreement over an outcome-determinative fact." In re Energy Future Holdings Corp., 990

F.3d 728, 737 (3d Cir. 2021) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The purpose of a motion for summary judgment is not to weigh the evidence presented,

but rather to determine if the evidence warrants adjudication by trial. Anderson v. Liberty

Lobby, Inc., 477 U.S. at 249–252 (1986). In reviewing the evidence presented, the court must

draw all reasonable inferences in the light most favorable to the non-moving party. Halsey v.

Pfeiffer, 750 F.3d 273, 287 (3rd Cir. 2014).

To successfully oppose entry of summary judgment, the non-moving party may not

simply rest on its pleadings, but must demonstrate, through the submission of admissible

evidence, that a factual dispute remains for trial. In re Bentivegna, 597 B.R. 261, 263–64

(Bankr. E.D. Pa. 2019) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).

This standard applies where, as here, parties have filed competing motions for summary

judgment. Cross motions for summary judgment must each be analyzed on their own merits; the

filing of conflicting motions does not necessarily mean that one must be granted if the other is

denied. Transportes Ferreos de Venezuela II CA v. NKK Corp., 239 F.3d 555, 560 (3d Cir.

2001); St. Paul Fire & Marine Ins. Co. v. Pennsylvania Nat'l Mut. Cas. Ins. Co., 524 F.Supp.3d

412, 415 (E.D. Pa. 2021).

Critical to the disposition of this dispute is the parties' respective burdens of proof. Judge

Frank summarized the burdens with regard to motions for summary judgment in a 2017 Opinion:

> If the movant is the defendant or the party without the burden of proof, the movant must
> demonstrate the absence of a genuine issue of material fact, but the movant is not
> required to support the motion with affidavits or other materials that negate the
> opponent's claim. Rather, the movant may assert that the party with the burden of proof
> has not come forward with evidence to support one or more elements of its claim . . .
> On the other hand, if the movant is the party with the burden of proof at trial, the standard
> is more stringent. The movant must produce enough evidence to justify a directed verdict
> in its favor in order to meet its initial burden.

In re Odom, 571 B.R. 687, 693 (Bankr. E.D. Pa. 2017) (citations omitted).

## VI. ANALYSIS

Because this Adversary Proceeding raises a variety of procedural and substantive issues, the analysis will take an unusual path.  While my determination amounts to a disposition of the matter in favor of the Debtor, I will not simply grant summary judgment on all counts.  Rather, a majority of the counts will be dismissed for lack of jurisdiction or related issues.  Specifically, two (2) counts will be dismissed for lack of jurisdiction, two (2) counts will be dismissed for lack of standing, and five (5) counts will be dismissed as moot.  I will grant summary judgment to the Defendant with regard to the seven (7) causes of action seeking a denial of discharge.

This analysis seeks to deal with chaotic litigation in the most efficient and straightforward way.

### A.  Counts Dismissed for Lack of Jurisdiction

Bankruptcy courts are courts of limited jurisdiction.  If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3).

### 1.  Injunction prohibiting Debtor from destroying records of DBM (Count XIII); Injunction prohibiting Debtor from selling assets of DBM (Count XIV)

Counts XIII and XIV ask that the Court enjoin the Debtor from disposing of property in which the Debtor, her deceased husband's estate, or DBM LLC have an interest or which relate to the operations of DBM.

First, I note that Counts XIII and XIV fail to cite a legal basis for relief.  The two (2) counts only cite Bankruptcy Rule 7001(7), which provides that a "proceeding to obtain an

injunction" amounts to an adversary proceeding.  However, Rule 7001 is a procedural rule and provides no legal basis on which a party may be enjoined.

But Counts XIII and XIV face a larger hurdle: the Court lacks jurisdiction to hear these causes of action.  It is axiomatic that Bankruptcy Courts only have jurisdiction with regard to property of the bankruptcy estate.  In re Hall's Motor Transit Co., 889 F.2d 520, 522 (3d Cir. 1989) ("The bankruptcy court's jurisdiction does not follow the property, but rather, it lapses when the property leaves the debtor's estate.").  The Plaintiff, in fact, admits that the assets of DBM are not property of the estate.  Complaint, ¶159.  Therefore, this Court lacks jurisdiction with regard to property belonging to DBM or Andrew Brenner's estate.

In the alternative, I note that this count may be dismissed for lack of standing.  While the Court does have jurisdiction to adjudicate disputes regarding the Debtor's estate, the chapter 7 trustee – not the creditor Plaintiff – is the proper party to bring such an action.  Matter of Educators Grp. Health Tr., 25 F.3d 1281, 1284 (5th Cir. 1994) (noting that trustee has "exclusive standing" to assert an estate claim); In re Zavala, 444 B.R. 181, 189 (Bankr. E.D. Cal. 2011).[11]

Moreover, the Plaintiff has shown no traceable injury to her as a result of the vague allegations of misconduct stated in Counts XIII and XIV.  Perhaps Ashton means to argue that it is imperative to stop the Debtor from selling or transferring assets which may be liquidated in order to fund the estate and make a meaningful distribution to creditors.  But such logic is not made clear and would likely not be specific enough to amount to a coherent pleading.  As these two (2) counts are pled, the Plaintiff asks for the extraordinary relief of an injunction because she

---

[11] Although under certain circumstances (not present here) a party may exercise derivative standing in place of the trustee, such standing is "the exception rather than the rule." In re Baltimore Emergency Servs. II, Corp., 432 F.3d 557, 562 (4th Cir. 2005).

alleges that the Debtor is a fraud who may dispose of valuable assets.  Such an argument is

tangential and fails to identify an "injury to a legally protected interest fairly traceable to [the

Debtor's] actions."  In re Bucchino, 439 B.R. 761, 773 (Bankr. D.N.M. 2010), aff'd sub nom.

Bucchino v. Wells Fargo Bank, N.A., 2011 WL 13284466 (D.N.M. Sept. 14, 2011) (noting that

in these circumstances only the chapter 7 trustee has standing to assert impermissible activity

with regard to property of the estate).

　　　　For all these reasons, Counts XIII and XIV will be dismissed.


### B.  Counts Dismissed for Lack of Standing

　　　　Related to a court's need to satisfy itself of jurisdiction is the requirement that a plaintiff

has standing to bring a cause of action.  Standing is a means of enforcing a court's "case or

controversy" doctrine; court's do not expound on matters which lack a live dispute.  In re Iezzi,

504 B.R. 777, 794 (Bankr. E.D. Pa. 2014) ("mootness may be said to be 'the doctrine of standing

set in a time frame: The requisite personal interest that must exist at the commencement of

litigation (standing) must continue throughout its existence (mootness).'").  In order to establish

standing under Article III, a plaintiff must show (i) an "injury in fact," (ii) a "causal connection"

between the injury and the challenged conduct, and (iii) a likelihood that the injury will be

"redressed by a favorable decision."  In re Brown, 2018 WL 4637465, at *3 (Bankr. S.D.N.Y.

Sept. 25, 2018).  To qualify for standing, a claimant must present an injury that is concrete,

particularized, actual or imminent, fairly traceable to the defendant's challenged behavior, and

likely to be redressed by a favorable ruling.  In re Kaur, 2014 WL 3361432, at *4 (B.A.P. 9th

Cir. July 9, 2014).

**Bankruptcy Fraud (Count I); Wrongful Use of Bankruptcy Process pursuant to 18 U.S.C. §§151-152 (Count II)**

Count I asserts that the Debtor has misappropriated and laundered funds and therefore asks that the bankruptcy be dismissed with prejudice.  The cause of action—without citing a statutory section or basis in law—alleges "bankruptcy fraud."  Such an allegation may, under certain circumstances, be brought under 28 U.S.C. §157.  Similarly, Count II asks that the Debtor's chapter 7 case be dismissed with prejudice due to the Debtor's "wrongful use" of the bankruptcy process.  This Count is brought under 28 U.S.C. §§151-152, sections which allow for fines and imprisonment upon a determination that a bankruptcy debtor has concealed assets and or committed bribery.

The factual allegations in Counts I and II are paper thin.  The indication is at most that the Debtor misstated assets and exemptions- allegations that may have supported a pleading of nondischargeability.

But I need not delve into the Plaintiff's failure to plead supporting facts because these counts must be dismissed on a legal basis; the law is clear that the Plaintiff creditor lacks standing to bring criminal causes of action against a debtor.  See In re Yee, 2017 WL 3300607, at *4 (B.A.P. 9th Cir. Aug. 3, 2017) (citing cases); see also In re Nagel, 2020 WL 1182664, at *1 (Bankr. E.D. Ky. Feb. 21, 2020); 1 Collier on Bankruptcy P. 7.12 (16th Ed. 2024) (noting that no language in the Code or Rules "expressly authorizes a party to seek this kind of relief . . . . The text speaks only to the obligation of a judge, receiver, or trustee to make a referral if there are reasonable grounds for believing that a criminal violation has occurred or that an investigation should be had."); In re Valentine, 196 B.R. 386, 388 (Bankr. E.D. Mich. 1996) (creditor does not

have the right to request that the Bankruptcy Court refer a matter for criminal investigation, much less bring the action itself).[12]

Imposing a sanction or putting the Debtor in jail—remedies provided for by the sections cited in Counts I and II—will not, in fact, redress the harm that the Plaintiff has allegedly suffered, namely the loss of a moderate sum of money.  The Plaintiff's lack of standing means that this Court does not have jurisdiction to adjudicate these allegations.  Counts I and II will therefore be dismissed.

### C.  Counts Dismissed as Moot

Under Article III, a federal court may only exercise jurisdiction where an actual "case" or "controversy" exists.  Hamilton v. Bromley, 862 F.3d 329, 334 (3d Cir. 2017).  A case becomes moot if "developments occur during the course of the adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief."  Trustees of Gen. Assembly of Lord Jesus Christ of Apostolic Faith, Inc. v. Patterson, 641 F. Supp. 3d 125, 133 (E.D. Pa. 2022).

The requirement that a court only exercise jurisdiction over a live case or controversy applies to bankruptcy adversary proceedings, even though Bankruptcy Courts are not Article III courts.  In re DuMouchelle, 655 B.R. 120, 123 (Bankr. E.D. Mich.), reconsideration denied, 654 B.R. 904 (Bankr. E.D. Mich. 2023) (citing In re Rosenfeld, 698 Fed. Appx. 300, 303 (6th Cir. 2017)); In re Virovlyanskiy, 2014 WL 1800411, at *3 (E.D.N.Y. May 6, 2014).  The absence of a live case or controversy means that the bankruptcy court lacks jurisdiction to determine the matter.  In re Sundaram, 9 F.4th 16, 20 (1st Cir. 2021); In re Kaur, 2014 WL 3361432, at *4

---

[12]      An exception may be made where the bankruptcy fraud is alleged to be part of a RICO scheme.  In re Jamuna Real Est., LLC, 2010 WL 2773395, at *7 (Bankr. E.D. Pa. July 13, 2010).

(B.A.P. 9th Cir. July 9, 2014).  A claim is moot when "the court can grant no effective relief because the plaintiff has already received all the relief he could."  In re Klingler, 301 B.R. 519, 523-24 (Bankr. N.D. Ill. 2003).

For reasons discussed below, I find that five (5) of the causes of action are moot.  These counts will be dismissed for lack of subject matter jurisdiction.

### 1.   Declaratory judgment that the Escrow Account is not property of the estate

Count X of the Complaint asks the Court to declare that the Escrow Account belongs to the Plaintiff rather than to the Debtor's chapter 7 estate.  This Count is moot for the simple reason that Plaintiff has already received the relief requested; pursuant to the Settlement, the Trustee paid the balance of the Escrow Account to the Plaintiff.  Doc. #19, Ex.A.  Because there is no relief for the Plaintiff to receive, Count X will be dismissed as moot.[13]

### 2.   Declaratory judgment that the Casualty Insurance payments to Debtor are property of the estate

Similar to Count X, Count XI—seeking a declaratory judgment that Insurance Payments are property of the estate and the only count on which the Plaintiff seeks summary judgment—does not present a justiciable controversy.  In seeking summary judgment with regard to this cause of action, the Plaintiff argues that because the Insurance Proceeds were compensation for the loss of property that belonged to the Debtor's estate, the Proceeds themselves are also property of the estate.  In other words, Plaintiff wants a *pro rata* share of the $45,000.00 that the Debtor received as compensation for the loss sustained in the Barn Fire.[14]

---

[13]   Further, and as an alternative basis for this finding, I note that the Plaintiff admits that the Escrow Account is not property of the estate. See Complaint, ¶¶164,169.  Therefore, this Court does not have jurisdiction to adjudicate disposition of this asset.

[14]   Plaintiff's request ignores the fact that the Insurance Proceeds have likely already been spent. See doc. #19.

Document       Page 14 of 20

The argument that insurance proceeds attributable to estate property are property of the estate is colorable.  E.g. In Re Harding, 2024 WL 957986, at *4 (Bankr. C.D. Ill. Mar. 5, 2024) ("It does not matter whether the property later changes form; insurance proceeds traceable to estate property remain estate property and are exempt to the extent traceable to properly exempted property.").  However, such case law may not be applicable because the Debtor purchased the fire insurance post-petition.  See doc. #19 at 8.

In any event, parsing the law on the question of whether the Insurance Proceeds belong to the bankruptcy estate is neither relevant nor necessary because, as the Defendant points out, the Insurance Proceeds were abandoned by the Trustee to the Debtor as part of the Stipulation.  The Stipulation provides, inter alia, that "[t]he Insurance Payments shall be abandoned back to the Debtor pursuant to 11 U.S.C. §554(a) and Fed. R. Bankr. P. 6007(a)."  Doc. #19, Ex. A.  The Plaintiff was a party to this Stipulation and thus specifically agreed to its terms. Id.[15]

Abandonment of property of the estate by a chapter 7 trustee has the effect of ending this Court's jurisdiction with regard to any dispute about the property.  I have previously discussed the effect of abandonment:

> Once property is abandoned (pursuant to and permissible by the standard set forth in § 554), its whereabouts and status are presumptively **beyond the control of the bankruptcy court** . . . **the trustee is divested of control of the property because it is no longer part of the estate**. Thus, **abandonment constitutes a divesture of all of the estate's interests in the property**.  Property abandoned under section 554 reverts to the debtor, and the debtor's rights to the property are treated as if no bankruptcy petition was filed. . . .

In re Wilton Armetale, Inc., 618 B.R. 424, 436 (Bankr. E.D. Pa. 2020) (citing 5 Collier on Bankruptcy ¶ 554.02 (16th Ed. 2020) (further discussing the Trustee's discretion to abandon property) (emphasis added).

---

[15]      Review of the document belies the Plaintiff's assertion that the Stipulation was "exclusively between the Trustee and Debtor." Doc. #62 at 2.

Thus, because the agreed abandonment of the Insurance Proceeds means that the

proceeds are no longer property of the estate, the Plaintiff's argument that the funds must be

administered by the chapter 7 trustee is illogical.  For this reason, summary judgment will be

denied to the Plaintiff.  Further, because no active controversy exists, Count XI will be dismissed

as moot.

> **3.  Denial of discharge until Debtor complies with exempt property claims under §522**

Count XII asks that the Debtor's discharge be denied for failure to take the proper

exemptions pursuant to 11 U.S.C. §522.  This count could be dismissed as having failed to state

a claim; there is no provision in the Code denying the Debtor a discharge for misstating an

exemption.  Viewing the Count in the light most favorable to the Plaintiff, the allegation may—

barely—be read as an objection to the Debtor's stated exemptions.

However, even if Count XII is considered an objection to the Debtor's stated exemption,

the cause of action must be dismissed because it was filed out of time.

An exemption will be permitted unless a timely objection is filed.  Rule 4003(c) places

the burden of proof on the objecting party to demonstrate that the exemption is not properly

claimed.  Bankruptcy Rule 4003(b) sets the time limit for a party to object to a debtor's asserted

exemption:

> . . . a party in interest may file an objection to the list of property claimed as exempt
> within 30 days after the meeting of creditors held under § 341(a) is concluded or within
> 30 days after any amendment to the list or supplemental schedules is filed, whichever is
> later.

Fed. R. Bankr. P. 4003(b)(1).  The thirty (30) day limit provided for in Rule 4003(b) is strictly

construed.  In re Buffenmeyer, 624 B.R. 766, 771 (Bankr. E.D. Pa. 2020).

Here, the meeting of creditors was held and concluded on January 10, 2023.  This

Adversary Proceeding was filed on February 28, 2023—49 days after the §341 meeting, and 19

days late.  Counsel makes no argument regarding why a late objection to a claim of exemption

should be allowed.  I also note that Count XII is conclusory and fails to specify which amounts

listed on Amended Schedule C (doc. #110 in the main case) are improper.  For these reasons,

Count XII will be dismissed.

### 4. Seeking accounting of business transactions from 2019 through filing of petition (Count XV) and Seeking accounting of transactions with Fire and Casualty Insurance (Count XVI)

Count XV asks for "an accounting of all Debtor's financial transactions . . . between and

among E-Built, Design Build Maintain LLC . . ."  Complaint, ¶31.  Similarly, Count XVI seeks

"an accounting of all Debtor's financial transactions . . . from the Fire and Casualty insurance."

The Plaintiff purports to bring these causes of action pursuant to Bankruptcy Rule 7001(7). That

portion of the Rules does not provide for substantive relief; rather, the Rule states that "a

proceeding to obtain an injunction of other equitable relief" is an adversary proceeding.

The relief sought in Counts XV and XVI amounts not to a basis for litigation, but rather a

discovery request—Plaintiff wants extensive documents from the Debtor. Because discovery in

this matter has been extensively litigated and is now closed, see doc. #'s 30, 46, 50, 51, this

portion of the Complaint is moot and will be dismissed.

### D.  Summary Judgment Granted to the Debtor

The Complaint asks for the Debtor's discharge to be denied due to alleged concealment

of assets and intent to defraud creditors.  The Plaintiff states a total of seven (7) causes of action

seeking such relief:[16]

---

[16]      These six (6) causes of action are stated in seven counts of the Complaint; counts III and VIII are duplicative of each other.

- Counts III and Count VIII: denial of discharge pursuant to §727(a)(2)(A)
- Count IV: denial of discharge pursuant to §727(a)(2)(B)
- Count V: denial of discharge pursuant to §727(a)(3)
- Count VII: denial of discharge pursuant to §727(a)(4)(A)
- Count IX: denial of discharge pursuant to §727(a)(5)(A)
- Count XV: denial of discharge pursuant to §523(a)(2)(A)

Considering the volume and severity of relief sought, the pleading is, remarkably, both bare and repetitious. Four (4) of the seven (7) counts simply state the relevant Code section and offer no explanation of what actions rise to a violation. Counts VIII and XV offer a sprinkling of specific allegations and point to the Plaintiff's general and consistent allegation that the Debtor fraudulently obtained the Lease by false pretenses. Count VIII—the most robust but still weak— alleges that the Debtor is "concealing . . . financial assets." Complaint, ¶26. The assertion is that Debtor's schedules do not account for $101,846.00 in assets. Id. However, the Plaintiff does not tell us where the money came from, what action(s) the Debtor took to conceal the assets, and where the money went. As the Debtor points out, the "Plaintiff does not specify any asset that Defendant allegedly concealed but simply asserts that she somehow should have more assets." Motion at ¶15 (emphasis omitted).

The crux of the Plaintiff's argument with regard to why a finding of nondischargeability is warranted appears to be her assertion that the Debtor and Mr. Brenner used their businesses— E-Built and DBM—to squirrel away money and hide assets from creditors. See Complaint, ¶¶27, 100-104, 119, 120,202, doc. #28; doc. #37 at 5,8. In other words, the "Debtor . . . should have significantly more cash than disclosed in her . . . schedules." Doc. #28 at 1. An indication that a debtor may have behaved in a manner that warrants denial of discharge is a starting point for relief. However, assumptions about what must have happened do not come close to satisfying the Plaintiff's burden.

It is well settled that in order to prevail on a determination of nondischargeability, a
plaintiff must show that the Debtor had intent to defraud.  Rosen v. Bezner, 996 F.2d 1527, 1533
(3d Cir. 1993); In re Kaplan, 634 B.R. 679, 689 (Bankr. E.D. Pa. 2021).  Proving intent is a
"heavy burden."  In re Crawford, 476 B.R. 890, 896 (Bankr. W.D. Pa. 2012).[17] The Plaintiff
offers no such evidence—or even an idea of what that proof might look like.  Rather, the
Plaintiff's Response summarizes her position as follows:

> Now the parties are left to their proofs in trial before this Honorable Court . . . Debtor
> confuses and equates 'discovery' with evidence. They are different. Discovery occurs
> before trail begins. **Evidence is presented at trial**, including testimony.  The
> determination on whether the burden of proof is met is **made at the conclusion of
> testimony** and evaluation of other evidence adduced . . . . Only then is the verdict
> rendered.

Response at ¶¶2, 4 (emphasis added).

The Plaintiff supports her inability to provide *any* evidence for her sixteen (16) counts at
the summary judgment stage by indicating that such proof is not yet necessary.  This
understanding of practice affords no opportunity for a defendant to bring a summary judgment
motion and is contradicted by the law in this Circuit which specifies that a plaintiff challenged by
a summary judgment motion must provide some concrete evidence at this stage in order to get to
trial. Judge Frank summarized this principle:

> [T]he Trustee misunderstands her obligation under Rule 56 as the party bearing the
> burden of proof at trial. To be blunt, **the "appropriate time" for demonstrating that
> there is evidence that supports every** element of each of the Trustee's claims (in
> response to the contention that no such evidence exists) **is now, at summary judgment**.
> It is not sufficient for the Trustee to express "confidence" that she "will be able" to
> muster evidentiary support for her claims at trial.

---

[17]      Further, "[i]ssues such as intent and credibility are rarely suitable for summary judgment."  Wishkin v.
Potter, 476 F.3d 180, 184 (3d Cir. 2007).

In re Polichuk, 506 B.R. 405, 423 (Bankr. E.D. Pa. 2014) (emphasis added).  A few years ago I echoed Judge Frank's ruling that evidence must be presented by a plaintiff at summary judgment:

> [The Plaintiff] facing a motion for summary judgment, offers *no evidence* to support Counts IV and V; her Response is devoid of any documentary or testamentary evidence in support of the nondischargeability counts, causing the court to conclude that the [Plaintiff] has no such evidence. Despite the fact that discovery in this matter has concluded, the [Plaintiff] apparently wants to hold her cards until trial, when she promises to reveal supporting facts of the Debtor's intent and misappropriation. **Forcing a trial and enjoying the benefit of keeping the Debtor on the hook in the meantime, however, is not an option where the Defendant's pursuit of summary judgment forces the Trustee's hand.**

In re Buffenmeyer, 629 B.R. 372, 390 (Bankr. E.D. Pa. 2021) (emphasis added); see also In re Burke, 523 B.R. 765, 772 (Bankr. E.D. Pa. 2015) ("It has long been held that a nonmoving party may not rely on bare assertions, conclusory allegations or suspicions, nor rest on the allegations in the pleadings.  Rather, the nonmoving party must go beyond the pleadings and either by affidavits, depositions, answers to interrogatories, or admissions on file, designate specific facts showing that there is a genuine issue for trial."); Drummer v. Hosp. of Univ. of Pa., 455 F.Supp.3d 160, 167 (E.D. Pa. 2020) ("summary judgment is essentially 'put up or shut up' time for the non-moving party; the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument.") (citations omitted).[18]

---

[18] The Plaintiff had more than ample opportunity to discover evidence in support of her myriad allegations. Due to the various disputes regarding the nature and extent of pretrial procedures, the parties had an extended discovery period; the deadline was extended by six (6) months as a result.  See doc. #'s 5, 21, 50, 51.  Most of this delay was caused by the Plaintiff.  In fact, because the volume of information sought by the Plaintiff was so extensive, I granted in part the Defendant's Motion to Quash.  See doc. #30.  Accord In re Polichuk, 506 B.R. 405, 424 (Bankr. E.D. Pa. 2014) ("This is not the paradigm case in which a party sat back, took no discovery and then filed a summary judgment motion shortly before trial as a "back-door," belated discovery device . . . [t]he discovery Fn cont'd

Because the Plaintiff fails to meet her burden of offering evidence in response to the Debtor's motion for summary judgment, summary judgment will be granted to the Debtor on the above listed seven (7) counts of the Complaint.

## VII. CONCLUSION

The Plaintiff's 16 count meandering and overstuffed Complaint tries to use a sledgehammer to crack a nut.  The amount owed to the Plaintiff is $41,500.00, about $10,000.00 more than the total value of what the Debtor owns.  The chapter 7 trustee determined that there are no assets of the Debtor to distribute; the Plaintiff offers no evidence to the contrary.  It is thus difficult to fathom what Ashton hopes to achieve by way of this ongoing litigation.

The dismissal of certain counts and summary judgment to the Debtor with regard to the remaining counts succeeds in disposing of the Adversary Proceeding and allows the Debtor to receive a discharge and move on with her life.  While the Plaintiff, like any creditor, has the right vigorously to seek payment of amounts owed, this litigation amounted to more than a good faith attempt to collect a debt.  The resulting labor is not the highest and best use of judicial resources, attorney efforts, and the Debtor's scarce funds.

Date: **June 14, 2024**

**PATRICIA M. MAYER**
**U.S. BANKRUPTCY JUDGE**

---

that the parties conducted is well documented in the record by the motions and other filings on the court docket. The volume of that discovery has been substantial.")