```
                    UNITED STATES BANKRUPTCY COURT
                    EASTERN DISTRICT OF PENNSYLVANIA

                                           .
    IN RE:                                 .    Chapter 13
                                           .
    Ashley May,                            .
                                           .
              Debtor.                      .    Bankruptcy #22-10430 (PMM)
    ...................................................................
                                           .
    Ann L. Ashton,                         .
                                           .
              Plaintiff,                   .
                                           .
              v.                           .
                                           .
    Ashley May, et al.,                    .
                                           .
              Defendants.                  .    Adversary #23-16 (PMM)
    ...................................................................
```

Philadelphia, PA
September 13, 2023
9:33 a.m.

TRANSCRIPT OF:

MOTION TO QUASH/MODIFY SUBPOENAS FILED BY ASHLEY MAY
REPRESENTED BY JOSEPH P. KERRIGAN (COUNSEL).

BEFORE THE HONORABLE PATRICIA M. MAYER
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For The Debtor:          Joseph P. Kerrigan, Esq.
                         461 N. 3rd St.-Ste. 2B
                         Philadelphia, PA 19123

For Ann L. Ashton:       David G. McNitt, Esq.
                         David G. McNitt, Esq., PC
                         2401 Woodview Way-Ste. 2401
                         Malvern, PA 19355

2

| | |
|---|---|
| Audio Operator: | Chris Caruso |
| Transcribing Firm: | Writer's Cramp, Inc.<br>1027 Betty Lane<br>Ewing, NJ 08628<br>609-588-8043 |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

```
 1              THE COURT:  Okay.  So, I think the first matter is
 2   (inaudible) vs. May.  Okay.  Good morning.
 3              MR. MCNITT:  Good morning.  Woops.  I'm David
 4   McNitt.  I represent Ann Ashton through her power of
 5   attorney --
 6              THE COURT:  Okay.
 7              MR. MCNITT:  -- Thomas Ashton.
 8              THE COURT:  Okay.
 9              MR. MCNITT:  I do not see Mr. Kerrigan here.
10              THE COURT:  Have you spoken to him?
11              MR. MCNITT:  I have not.
12              THE COURT:  You have not?  I mean, he did file a
13   response, so I'm a little --
14              MR. MCNITT:  Yeah, that was my response.
15              THE COURT:  Oh, your response.  I'm sorry.
16              MR. MCNITT:  Yes.
17              THE COURT:  So I'm confused that he's not here to
18   prosecute his motions, so --
19              MR. MCNITT:  Me too, Your Honor.
20              THE COURT:  Okay.  Do you -- have you talked to him
21   this morning at all?
22              MR. MCNITT:  I'm sorry?
23              THE COURT:  Have you talked to him this morning at
24   all?
25              MR. MCNITT:  No, I haven't.
```

4

 1          THE COURT:  No, okay.  Why don't we do this.  I'm
 2    going to pass this for a moment.  Do you want to just try and
 3    get a hold of him?  I just want to kind of make sure that
 4    we're all on the same page, that he was supposed to be here.
 5    And if you can't get ahold of him, that's fine.  Just come
 6    back and tell me, and then we'll deal with the motion.
 7          MR. MCNITT:  I will do so, Your Honor.
 8          THE COURT:  All right.  Thank you.
 9          MR. MCNITT:  If you would indulge me for a moment
10    while I pick up (inaudible).
11          THE COURT:  Oh, absolutely, absolutely.
12          MR. MCNITT:  Whatever you do, Judge, don't get old.
13          THE COURT:  Well, the alternative is not good
14    either.  So I'm not sure.
15          MR. MCNITT:  I wake up some mornings and
16    respectfully disagree with that.
17          THE COURT:  Oh, all right.  Well, okay.  Point
18    taken.
19       (Recess)
20          THE COURT:  Okay.  So before I move on to the case
21    of the day, why don't we go back to the first case?  Mr.
22    McNitt, do you want to tell me what is going on with Mr.
23    Kerrigan, if anything?
24          MR. KERRIGAN:  I'm getting a call from him now.
25          THE COURT:  Oh, okay.

```
 1            MR. KERRIGAN:  No, sorry.
 2            THE COURT:  Oh, is this Mr. Kerrigan?
 3            MR. KERRIGAN:  Yes, it is, Your Honor.
 4            THE COURT:  Oh.  Glad to see you.  We were just
 5   about to move forward without you.  That's okay.  We just
 6   wanted to make sure that you were here.  Okay.  All right.
 7   Well, then I guess we'll proceed with your motion.  Do you
 8   need a minute, or are you okay?
 9            MR. KERRIGAN:  If I could, Your Honor.
10            THE COURT:  Yes.  Okay.  Do you want to talk first,
11   and I'll take an --
12            MR. KERRIGAN:  Yes.  Thank you.  Okay.  Why don't
13   you go do that?
14       (Recess)
15            THE COURT:  Okay, so let's go back to Ashton vs.
16   May.
17            MR. KERRIGAN:  At least I'm getting my exercise.
18            THE COURT:  You are.  You're getting your steps in.
19   It's all good.  Okay.
20            MR. KERRIGAN:  Good morning, Your Honor.  Joseph
21   Kerrigan for Ashley May.
22            THE COURT:  Okay.  It's your motion, so I will hear
23   from you first.
24            MR. KERRIGAN:  Okay.  From the podium or from here?
25            THE COURT:  Yes.
```

6

 1            MR. KERRIGAN:  Okay, thank you.  We are objecting to
 2   the -- they're looking -- this bankruptcy was filed in
 3   February of '22.  They're looking for discovery going all the
 4   way back to 2019.  And it's -- quite frankly, it's
 5   unnecessary.  This is a case that's been before the Chapter 7
 6   Trustee.  It was found to be a no-asset case.  Ms. May is an
 7   individual Debtor who has three kids.  She's widowed.  She
 8   lost her husband last year while we were in the middle of
 9   this.  He died unexpectedly at the age of 40.
10            And we went through 3 different 341 Hearings.  So the
11   Chapter 7 Trustee has done an extensive examination of all of
12   her assets.  Counsel interrogated her at each one of these
13   hearings.  Now, they want information.  And some of this
14   information is regarding a company where my client had
15   absolutely no ownership interest.  Mr. Brenner had complete
16   ownership interest.  And only -- it was a landscaping company
17   that was intermittently operating.  And there was -- she's
18   renting her home.
19            She has a truck that's like 20 years old.  She's not
20   hiding any assets.  She's a widower who's raising three
21   children.  One's a newborn.  Two are school aged.  So, after a
22   while, it just becomes a fishing expedition, Your Honor.
23   We've been going through this now for quite some time.  The
24   allegations are that she's hiding assets, but we initially --
25   she initially filed her bankruptcies at Chapter 13 in February

1    of '22 for the sole reason to try to remain in the house for

2    her kids.

3            And at that point, Mr. Ashton -- Ms. Ashton said that the

4    Plan wasn't feasible because she didn't make enough money.

5    Now, the allegation is that she's hiding assets.  It's a bit

6    of Calvinball here.  We're moving the goal-posts around.  And

7    we're -- again, we're back into, now, this fishing expedition

8    of trying to go through all of the financial information going

9    back to 2019, and it's not warranted.

10              THE COURT:  Would you agree that they would be

11   entitled to at least the year prior to --

12              MR. KERRIGAN:  Yes.

13              THE COURT:  -- bankruptcy?  Okay.

14              MR. KERRIGAN:  Yeah, we could live with a year prior

15   to, you know.  And again, Ms. Schubert (phonetic) did examine

16   all this information, but yeah.  I mean, we could --

17              THE COURT:  That's been provided to counsel?

18              MR. KERRIGAN:  I don't know if Mr. McNitt had it or

19   not.

20              THE COURT:  Okay.

21              MR. KERRIGAN:  We would provide that one year.

22              THE COURT:  Okay.

23              MR. MCNITT:  Yeah.

24              THE COURT:  Okay.  And do you have an objection to -

25   - it looked like it was your client, any joint accounts

1   between her and her now deceased husband and then the company
2   accounts.
3           MR. KERRIGAN:  Yeah.
4           THE COURT:  So is the objection then just that you
5   don't want to go back to 2019, or is there a further objection
6   with respect to the titled accounts that they're looking for?
7           MR. KERRIGAN:  If -- I understand they have an
8   objection on that.  But if it's just to provide one year just
9   to get this over with, my client doesn't have any assets, and
10  we're just trying to get this thing done.
11          THE COURT:  Okay.
12          MR. KERRIGAN:  Okay?  As an aside, two major issues
13  have been resolved in this case already.  There was money that
14  was being held in escrow, and the Court has dispersed those
15  and as well as the insurance proceeds --
16          THE COURT:  Right.
17          MR. KERRIGAN:  -- that they agreed that we're not
18  going -- they're not part of the Bankruptcy Estate.
19          THE COURT:  Okay.
20          MR. KERRIGAN:  But yeah.  I mean, I understand that
21  objection.  But for the purposes, I would -- we would provide
22  that one year.
23          THE COURT:  Okay.
24          MR. KERRIGAN:  Yes.
25          THE COURT:  And what about the -- I think it's -- E-

9

1   Built is the employer that they're looking --
2           MR. KERRIGAN:  Yes.
3           THE COURT:  -- for, I guess, directly compensation
4   information.  Are you still objecting to that as well --
5           MR. KERRIGAN:  I would --
6           THE COURT:  -- for that same period?
7           MR. KERRIGAN:  I would, Your Honor, because it was a
8   -- she's a W2 employee.
9           THE COURT:  Okay.
10          MR. KERRIGAN:  It's all on her income taxes.
11          THE COURT:  And they've been provided?
12          MR. KERRIGAN:  Yes, they have.
13          THE COURT:  Okay.  Okay.
14          MR. KERRIGAN:  Yes.
15          THE COURT:  All right.  Is there anything further?
16          MR. KERRIGAN:  I don't think so.
17          THE COURT:  Okay.
18          MR. KERRIGAN:  Thank you.
19          THE COURT:  Thank you.  All right, Mr. McNitt?
20          MR. MCNITT:  Your Honor, a lot of what Mr. Kerrigan
21  said is absolutely true.  There are some things that I do
22  disagree with.  And the reason for the look back to 2019
23  basically emanates from a series of changing schedules that
24  were filed in this case, a total of four different schedules,
25  AB through the litany, albeit some of them in Chapter 13, some

1   of them in Chapter 7.

2       The issue, however, emanates from the beginning of the
3   relationship between Ms. May and Mr. Brenner as tenants and
4   Ms. Ashton as a landlord.  In 2019, they signed a lease for a
5   property, and in doing so, they made certain financial
6   disclosures.  And those --

7       THE COURT:  I'm going to stop you there for a second
8   --

9       MR. MCNITT:  Yes.

10      THE COURT:  -- because your complaint references 727
11  claims.  There is no 523 claim in there specifically as to
12  your debt.  So I'm -- that's why I'm wondering whether or not
13  going back to 2019 is relevant to your complaint.

14      MR. MCNITT:  Well --

15      THE COURT:  Your complaint is an overall 727,
16  several claims under 727, that there has been non-disclosure
17  transfers related to the bankruptcy case itself.

18      MR. MCNITT:  Yes.

19      THE COURT:  And that does not go back to 2019.  At
20  most, it'll go back a year prior to the filing, which is why
21  we're having this discussion about 2021 through 2022 instead.
22  So, unless you can tell me how the origination of the
23  relationship bears on her mishandling or non-disclosure of
24  assets in the bankruptcy context, I'm not sure that that is --
25  that that discovery is relevant to your Adversary Proceeding.

1         MR. MCNITT:  Well, there are two matters which I
2    believe really focus on it.
3         THE COURT:  Okay.
4         MR. MCNITT:  The first is an admission by Ms. May
5    during the 341 Hearing of which there were, I think, three,
6    that she, while working for E-Built, her employer and her
7    husband, now deceased, who also worked for E-Built, caused
8    that their wages, if you will, to be diverted into design,
9    build, maintain his company's accounts.  The reason that was
10   stated for that diversion was to avoid Creditors, which raised
11   a very big issue with me.  When --
12        THE COURT:  And when did that supposedly take place?
13        MR. MCNITT:  That's what we're trying to find out,
14   Your Honor.  That's why going back to 2019 is imperative
15   because did it --
16        THE COURT:  Okay.
17        MR. MCNITT:  -- did it start then, or when did it
18   start?
19        THE COURT:  Okay, okay.
20        MR. MCNITT:  Now, I did a forensic accounting review
21   of the information provided by the Debtor, and I come up with,
22   if you -- a possible secreting of as much as $100,000 by that
23   diversion.  Part of the reason for that is when they made
24   their application for rental, they had $22,000 in the bank
25   when they filed their Chapter 13 -- or when she filed her

1    Chapter 13, and Mr. Brenner was a non-filing co-Debtor.  That
2    amount had dropped to less than 10,000, despite the fact that
3    they were making gross income of $180,000 a year.
4         Their rental expense out of that was less than, I think,
5    25% of -- maybe as low as 20% -- of their gross income, which
6    is low by standards, real estate standards.  And there are two
7    factors that come up there.  The first one is the -- one of
8    the reasons why they were able to rent the property was there
9    was a statement made that, yeah, they had money coming in now
10   because they both were making a substantial salary, she
11   100,000, he 80,000 from E-Built.  And therefore, they would be
12   able to afford an option, whether or not it was enforceable or
13   not, that was referenced in the lease because there was no way
14   they were going to do it based on the amounts that they
15   showed.
16        Based on the schedules that she filed in the Chapter 13,
17   she was showing that there would be disposable monthly income,
18   and that's in Schedule J Line 25(c) of $2,195 a month.  Well,
19   that was after subtracting $3,963 of rent.  So if you go and
20   do the analysis, they didn't pay rent that they were supposed
21   to pay under a Supersedeas Order in the court in Chester
22   County for a period of seven months.  That meant they were
23   receiving income of $6,158 a month that was unaccounted for.
24        It can easily be accounted for if we get the documents
25   and we look at them.  But over the period of time, when you

1  extrapolate that it comes up to -- let's see -- $105,000,
2  almost $106,000 in terms of a cash flow unaccountability based
3  on information found or presented, therefore, I think it is
4  reasonable to ask to see the financial transactions.
5  Secondarily, in the various --
6           THE COURT:  Again, I mean, you're going back to
7  2019, and your complaint doesn't allege any fraudulent
8  transfer action or any 523 non-dischargeability of your debt
9  action.  So I'm -- I don't know that you have the ability to
10 go back to 2019, I guess is my point, given what you've pled
11 in your complaint.  So unless I'm wrong about that, which I
12 can pull up the complaint, but I didn't see anything that
13 specifically dealt with those types of claims, which would,
14 again, open the discovery to that time period.
15     But I just, I don't see it.  I mean, I see that, yes, we
16 can probably go back a year, and you can figure out whether or
17 not they're hiding a -- she was hiding assets within the year
18 up to the filing, whether there was discrepancy in income.
19 I'm fine with all of that.  I'm just not certain that there's
20 the ability to go back beyond that.
21          MR. MCNITT:  With due respect, Your Honor -- and I
22 didn't say all due respect.
23          THE COURT:  I understand.
24          MR. MCNITT:  (Inaudible) difference in that.  I
25 think it is imperative that we look at everything, and the

1    reason why is because of the multiple filings with respect to
2    the schedules, which in some schedules, she said, "I own this
3    property."  In other schedules, she said, "I own that
4    property," and it went back and forth, and it was impossible.
5    I have great difficulty.  It may not be impossible.
6           THE COURT:  But that's all post-petition amendments
7    which went from one chapter to another, so amendments were
8    inevitable there.  I would agree with you if there were new
9    assets that are -- you know, showed up later.  That's a
10   problem.  But --
11          MR. MCNITT:  Well, the (inaudible) --
12          THE COURT:  -- I don't know that that has anything
13   to do with the bank accounts that you're looking for from 2019
14   on.
15          MR. MCNITT:  That's where the fund comes in, and
16   that's where the forensic accounting comes in because if
17   you're putting monies away and not disclosing them to the
18   Bankruptcy Court, and that's what the forensic accounting that
19   I did --
20          THE COURT:  But having that done from 2021 through
21   the filing date is not enough?
22          MR. MCNITT:  Let me take one look here.  I do not
23   think so.  I mean, it's -- when you have somebody, a Debtor,
24   who comes in and gets caught and then admits that monies were
25   being diverted from the Debtor's and co-Debtor's accounts into

1    a company that the co-Debtor owed, that is an issue.  We don't
2    know where the monies that were diverted there were spent.
3    Now, if we go back and go to -- I guess it's August 2021, and
4    I'm sorry.  I don't have the exact month in front of me --
5    we're talking about a lot of money.
6              THE COURT:  Right.  And I'm willing to give you,
7    basically, from what I think is February of 2021 through
8    February of 2022, which is the year prior to filing, I'm
9    willing to allow you to get that.  My concern is going beyond
10   that because I don't know that you're -- again, that your
11   pleading, you know, has anything in it that would persuade me
12   to go beyond that time frame, at least for now.  I mean, I
13   suppose, you know, once you get that year's worth of
14   information, you can, you know, convince me otherwise to go
15   beyond that.  But I do think that it really needs to be
16   limited to the year prior to the filing.  I know you don't
17   agree, but --
18             MR. MCNITT:  I'm trying to be respectful, Your
19   Honor.
20             THE COURT:  I understand.  I completely understand.
21   Okay, so -- and I understand your argument.  So what I'm going
22   to do is I will allow you, again, from -- what's the filing
23   date to?
24             MR. KERRIGAN:  February 22nd of '22.
25             THE COURT:  Okay.  So essentially, February 22nd of

1  '21 through the filing date, to get all the bank accounts.
2  Mr. Kerrigan doesn't have an objection to you getting the
3  business accounts.  So it's all the accounts that you've asked
4  for in the Debtor's name, in the Debtor and her deceased
5  husband's name, in DBM, LLC and DBM something else.
6            MR. KERRIGAN:  There's one account, Your Honor.
7            THE COURT:  Oh, there's one account.  Okay.  Well,
8  I'll allow you to get all of that.  I will also allow you to
9  get a year's worth of compensation information from her
10 employer, which, I mean, I do think that you probably have
11 from her tax returns.  But if you want to verify that, I'm
12 okay with that as well.  I'm just not going to go beyond that.
13 So it's sort of a half win for you today because I'm at least
14 allowing you --
15           MR. MCNITT:  A half win?
16           THE COURT:  You know, it's better than nothing.  So,
17 again, I'll enter an Order that just limits it to that time
18 frame but allow you to get all of the accounts that you're
19 asking for.
20           MR. MCNITT:  If I may, Your Honor, I'd request one
21 small change to that proposal.
22           THE COURT:  Okay.
23           MR. MCNITT:  And that would be that E-Built provide
24 all accounts back to -- all checks back to 2019 or January
25 1st, 2020, I guess, would be a good start date where they

 1   diverted knowingly wages into design, build, maintain because
 2   one of --
 3           THE COURT:  Mr. Kerrigan is going to have an
 4   opposition to that, but go ahead.
 5           MR. KERRIGAN:  Yes.  (Inaudible) --
 6           THE COURT:  I'll let you finish first.
 7           MR. KERRIGAN:  -- (inaudible) if I could for --
 8           THE COURT:  Just -- okay.
 9           MR. KERRIGAN:  I understand, Your Honor.
10           MR. MCNITT:  What we've also got to understand is
11   that there is an action which has been stayed in Chester
12   County court --
13           THE COURT:  Right.
14           MR. MCNITT:  -- which deals with all of this as
15   well.  And we will be filing a Motion for Relief there.  But
16   that's the gist of the argument, Your Honor.  I have a Debtor
17   who's absolutely stated who's diverting assets.
18           THE COURT:  Understood.  I mean, there are many
19   reasons that that happens, but I understand.
20           MR. MCNITT:  And most of them deal with --
21           THE COURT:  I'll leave it there.  I'll leave it
22   there.  Mr. Kerrigan?
23           MR. KERRIGAN:  Yes, Your Honor.  If I could just
24   address the nefarious allegations about this diverting money
25   and --

                                                                      18

1               THE COURT:  Well, obviously, you're going to have an
2    issue with --
3               MR. KERRIGAN:  Yes.
4               THE COURT:  -- 2020 forward.  So tell me --
5               MR. KERRIGAN:  Yes.
6               THE COURT:  -- your argument.
7               MR. KERRIGAN:  But, Your Honor, just because there's
8    some allegations made here, I just want to address them.
9               THE COURT:  Okay.
10              MR. KERRIGAN:  The diverting of assets was -- they
11   were being paid paychecks.  The paychecks were being placed
12   into DBM's account so they could make their rents.  They can
13   make whatever living expenses because they were afraid they
14   were going to get their account garnished by a Creditor before
15   they filed the bankruptcy.  That was the diversion that we
16   were talking about.
17              THE COURT:  Okay.
18              MR. KERRIGAN:  Okay?
19              THE COURT:  So with respect to -- and I understand
20   that.  With respect to going back to 2020, I presume that you
21   have an objection to that?
22              MR. KERRIGAN:  2021?
23              THE COURT:  No, I think Mr. McNitt actually wants
24   the payroll to go back to 2020.
25              MR. KERRIGAN:  Your Honor, it's subject to a one-

```
 1   year look back, correct?  I would object.
 2              THE COURT:  Okay.  (Inaudible).  Okay.
 3              MR. MCNITT:  That was unexpected, Your Honor.
 4              THE COURT:  That was unexpected?
 5              MR. MCNITT:  Yeah.
 6              THE COURT:  Okay.  All right.  Again, I'm going to
 7   leave it there.  I'm going to leave it at the one year for
 8   both payroll and the accounts that I think it's Wells Fargo.
 9   And then, again, if you feel like there is something else
10   there and you want to file something else for me to consider,
11   I will -- you know, I'll allow you to do that.  But, for now,
12   I do think, based on the pleading, that a year is sufficient.
13   So I will add that Order.  Thank you.
14              THE COURT:  Thank you, Your Honor.
15       (Court adjourned)
16
17                           CERTIFICATION
18   I, Lewis Parham, certify that the foregoing is a correct
19   transcript from the electronic sound recording of the
20   proceedings in the above-entitled matter.
21
22
23   [signature: Lewis Parham]                    10/15/24
24
25   _____            _____
26   Signature of Transcriber                      Date
```